James AMBRUS *v.* RUSSELL CHEVROLET COMPANY

96-969                                              937 S.W.2d 183

Supreme Court of Arkansas
Opinion delivered February 17, 1997

*Dodds, Kidd, Ryan & Moore,* by: *Robert T. James,* for appellant.

*Barber, McCaskill, Jones & Hale, P.A.,* by: *Micheal L. Alexander* and *Thomas E. Osment, Jr.,* for appellee.

RAY THORNTON, Justice. Mr. James Ambrus, appellant, was injured in an accident while driving cars for his employer at an automobile auction. He alleged that the negligence of the driver of a van belonging to Russell Chevrolet caused the accident. At the conclusion of Mr. Ambrus's case, Russell was granted a directed verdict based on the trial court's ruling that no substantial evidence had been introduced to establish that Russell's driver was negligent. Mr. Ambrus appeals, and we affirm the decision of the trial court.

As we review an order granting a motion for a directed verdict, we view the evidence most favorably to the party against whom the verdict was directed; if evidence exists that establishes negligence beyond conjecture or speculation, it is error for the trial court to take the case from the jury. *City of Little Rock v. Cameron,* 320 Ark. 444, 897 S.W.2d 562 (1995). For that reason we carefully examine the evidence presented by Mr. Ambrus during the trial.

Mr. Ambrus's case-in-chief consisted of testimony from himself, James Richard, a Mid-Ark employee, and deposition testimony of his treating physician, Dr. Jim Moore.

Mr. Ambrus was employed to work for Mid-Ark Auto Auction in North Little Rock during October and November of 1994. His job was to drive cars through the sales barn during Mid-Ark auctions and to assist in setting up chairs and tables and in cleaning the sales barn following those events. Mr. Ambrus

worked at Mid-Ark for three to four weeks prior to the accident which was the basis of his Complaint.

On November 3, 1994, Mid-Ark held an auction for General Motors ("GM"). This was the first GM auction Mr. Ambrus worked. While performing his duties as a driver for Mid-Ark, Mr. Ambrus pulled an automobile out of a parking space to turn to the right and enter the flow of auction traffic. A van being driven by a Russell employee was approaching from Mr. Ambrus's left. The two vehicles collided.

Mr. Ambrus's testimony concerning the collision was somewhat contradictory. He said he saw the van to his left before he pulled out but he did not have time to stop. He also stated that he did not see the van at all prior to pulling out from the parking space, and asserted that if he had seen the van driving down the lane, he "wouldn't have pulled out in front of him."

Mr. Ambrus testified that it was his understanding that "the Mid-Ark people was the only somebody that was supposed to be out there driving cars." When asked if it was normal for other vehicles to be in the space where the cars collided, Mr. Ambrus replied, "Not that I know of." He explained that when he believed it was his turn to go, he pulled out from the parking spot without looking, and the accident resulted.

James Richards, the safety coordinator and comanager of Mid-Ark Auto Auction, testified that he coordinates both the labor and outside companies involved in the auction and implements the safety policies. He testified that he held a safety meeting for auction employees before each auction to talk about the proper procedure to remove vehicles from a parking space and to remind the drivers they need to drive defensively. Specifically, he testified that he told drivers to look out for dealers who were driving their cars off the lot, and that customers have the right to come out onto the lot and remove the vehicles which they have purchased.

Mr. Richards testified that the Russell employee had a right to be in the lane where he was traveling because Russell owned the vehicle and had every right to remove it from the auction

parking lot. He explained further that while there were alternative routes the Russell employee could have taken, he would have been going against the flow of traffic. He testified that the Russell driver went with the flow of traffic rather than going against it.

Based on the above testimony, the trial court found there was no substantial evidence to support a claim of negligence against Russell. Dr. Moore's testimony concerning Mr. Ambrus's injuries was not relevant to the issue of which driver was at fault.

█ We have defined negligence as "the failure to do something which a reasonably careful person would do." *City of Little Rock v. Cameron*, 320 Ark. at 444, 897 S.W.2d at 564 (quoting *Arkansas Kraft v. Cottrell*, 313 Ark. 465, 470, 855 S.W.2d 333, 337 (1993)). To establish a prima facie case of negligence, a plaintiff must show that he sustained damages, that the defendant was negligent, and that such negligence was the proximate cause of those damages. *Arkansas Kraft v. Cottrell*, 313 Ark. at 470, 855 S.W.2d at 337. While direct or circumstantial evidence may establish negligence, reliance on inferences based on conjecture or speculation are not sufficient. *Id.* at 471, 855 S.W.2d at 337.

█ Evidence of negligence is insubstantial where a factfinder is merely given a choice of possibilities that require the jury to resort to conjecture or guess as to a cause. *Id.* The fact that an injury, collision, or accident occurred is not of itself evidence of negligence or fault on the part of anyone. *Mahan v. Hall*, 320 Ark. 473, 477, 897 S.W.2d 571, 573 (1995).

█ There is no substantial evidence that Russell's employee was negligent in being in the lane of traffic where the accident occurred. The only testimony supporting the assertion that the Russell driver was not authorized to be in the traffic lane was Mr. Ambrus's statement that, as far as he knew, only Mid-Ark employees were supposed to be in the lane of traffic. Mr. Ambrus did not state that owners were denied the right to be there, but only that he did not possess personal knowledge of that right. Mr. Ambrus's own witness, James Richards, testified that the Russell employee was rightfully in the lane of traffic, and that Mr. Ambrus had been informed of this possibility during the preauction safety meeting.

Neither was substantial evidence introduced to show that the Russell employee was negligent in failing to stop before the collision. Mr. Ambrus testified that he did not see the van or he would have stopped before the collision, and he contends that the fact that a collision occurred creates an inference that the van driver was speeding and that inference is enough to support a finding of negligence. He stated that the accident "just caved in the whole side and part of the door caved in" and that the impact was enough to kill the engine of the car he was driving. However, James Richards testified that there was only a small scratch on the driver's side costing approximately $250.00 to repair. An exhibit was admitted showing an estimate in the amount of $264.47. As we ruled in *Mahan v. Hall*, the fact that an accident occurred is not of itself evidence of negligence or fault. *Mahan*, 320 Ark. at 477, 897 S.W.2d at 573. The damage to Ambrus's vehicle does not establish beyond conjecture or speculation that the Russell driver was speeding.

In his reply brief, Mr. Ambrus asserts that the trial judge should have recused himself. It does not appear from the record that this issue was ever addressed to that court. Additionally, Mr. Ambrus does not mention it in his first brief, precluding any response. Russell requests that this part of Mr. Ambrus's reply brief be stricken. Rather than strike a portion of the brief, we simply note that we do not address arguments raised for the first time on appeal.

Because we agree with the trial judge's finding that no substantial evidence of negligence by Russell's driver had been presented, we affirm the trial court's directed verdict.

Affirmed.

GLAZE, J., not participating.