The KROGER COMPANY *v.* Sharon SMITH

CA 05–320 218 S.W.3d 359

Court of Appeals of Arkansas
Opinion delivered November 30, 2005

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Michael Emerson*, and *Spicer, Flynn & Rudstrom, PLLC*, by: *Mildred L. Sabbatini,* for appellant.

*Charles P. Allen, Jr.*, for appellee.

T ERRY CRABTREE, Judge. Appellant Kroger Company appeals a judgment in favor of appellee Sharon Smith in the amount of $58,828.53. Smith had filed a complaint against Kroger in negligence after Smith injured her knee when her shopping cart tilted over while she was taking groceries to her car. Smith predicated her claim of negligence on the dual contentions that Kroger had a duty to assist her to her car and that it had a duty to warn her of the danger associated with a person of her size pushing a fully-loaded shopping cart. Kroger appeals the denial of its motion for a directed verdict in which it argued that it had no duty to assist or warn. Kroger's arguments have merit, and we reverse on both issues.

On July 22, 1997, Smith, then age twenty-three and a woman of small stature, went to the Kroger grocery store in Helena with her young daughter and cousin. Smith purchased a month's worth of groceries that the courtesy clerk sacked and placed into a shopping cart, or what the parties refer to as a "bascart." According to Smith, the cart was filled with twenty-five to thirty bags of groceries with two cases of soft drinks underneath. The courtesy clerk pushed appellee's cart aside and spoke with the cashier a moment before moving to another lane to sack groceries for Smith's cousin. Smith testified that she waited a moment, while the cashier and clerk were speaking, and then proclaimed, "I guess I'll have to take my own groceries out." Smith was not sure whether the courtesy clerk heard her comment. Smith then exited the store pushing the cart with her daughter in it. She proceeded down a ramp to the parking lot, but the cart tilted over when she was half-way down the ramp. Smith unsuccessfully attempted to aright the cart, and it landed on her knee.

Smith did not recall stepping on anything slippery or observe that there was anything wrong with the cart or the ramp. She stated that she did not request assistance with her bags and said that she had no reason to believe that she would encounter any difficulties in taking her groceries to the car. She believed that the cart fell over because it was overloaded and top heavy.

In support of her claim that appellant owed a duty to assist her in taking her groceries to the car, Smith introduced into evidence a written job description for courtesy clerks, which provided in part:

> Customer Service — Courtesy Clerks greet customers and respond to their questions and requests in a courteous and helpful way.

Moving bags to the customer's car — Courtesy Clerks must avoid getting in the way of cars in the parking lot. They must also help the customer avoid approaching cars.

Kenneth Mister testified on behalf of Kroger. He had worked for Kroger for thirty years and was the store manager in Helena at the time of Smith's accident. He testified that the duties of a courtesy clerk included sacking, cleaning floors and restrooms, assisting customers as needed, and cleaning the parking lot. He said that taking customers' bags to their vehicles was not an absolute duty and that eighty percent of their customers carried their own bags to their cars. If assistance was requested, he said "we would try to assist with this request." Mister further testified that the store attempts to maintain enough clerks to sack, keep the lot clean, and to take out groceries when requested, but that there were not enough clerks to take every customer's bags to their car. He was not aware of any similar accidents happening over the course of his employment.

Appellant's arguments on appeal stem from the denial of its motions for a directed verdict. Appellant argues that the evidence fails to establish that it had a duty to assist appellee to her car or to warn her of any dangerous condition.

 In addressing the issue of whether a directed verdict should have been granted, we must view the evidence in the light most favorable to the party against whom the verdict is sought and give it the highest probative value, taking into account all reasonable inferences deducible from it. *Martin v. Hearn Spurlock, Inc.*, 73 Ark. App. 276, 43 S.W.3d 166 (2001). If there is any substantial evidence to support the verdict, we must affirm the trial court. *Arkansas Kraft v. Cottrell*, 313 Ark. 465, 855 S.W.2d 333 (1993).

 To establish a prima facie case of negligence, the plaintiff must show that she sustained damages, that the defendant was negligent, and that such negligence was the proximate cause of the damages. *Id.* We have defined negligence as the failure to do something which a reasonably careful person would do. *Martin v. Hearn Spurlock, Inc., supra.* The mere fact that a person slips and falls does not give rise to an inference of negligence. *Arkansas Kraft v. Cottrell, supra.* In order to prove negligence, there must be a failure to exercise proper care in the performance of a legal duty that the defendant owed the plaintiff under the circumstances surrounding them. *Costner v. Adams*, 82 Ark. App. 148, 121 S.W.3d 164 (2003).

 The law is quite settled that a property owner has a general duty to exercise ordinary care to maintain the premises in a reasonably safe condition for the benefit of invitees. *Morehart v. Dillard Dep't Stores,* 322 Ark. 290, 908 S.W.2d 331 (1995). The question of whether a specific duty is owed is always a question of law and never one of fact for the jury. *See VanDeVeer v. RTJ, Inc.,* 81 Ark. App. 379, 101 S.W.3d 881 (2003). The owner is not an insurer of the safety of invitees on his premises, but his liability to an invitee must be based upon negligence. *Ollar v. George's Place,* 269 Ark. 488, 601 S.W.2d 868 (1980).

In *Lytle v. Wal-Mart Stores, Inc.,* 309 Ark. 139, 827 S.W.2d 652 (1992), there was testimony that it was the duty of Wal-Mart employees to assist its customers. Ms. Lytle asked for but did not receive assistance from an employee to retrieve a folder on a top shelf. So, Ms. Lytle climbed onto a lower shelf to reach the item. She lost her balance and fell, fracturing her ankle. The court rejected the argument that the store's policy of assisting customers gave rise to a duty of care. The court said that, although the employee may have been remiss in the duty to render courteous service, discourtesy does not translate into a legal liability.

In *Crenshaw v. Doubletree Corp.,* 81 Ark. App. 157, 98 S.W.3d 836 (2003), Mr. Crenshaw was a guest at the Doubletree Hotel who was taken by the hotel's van to a restaurant. He fell when he stepped out of the van onto the street. Although the driver of the van had assisted Crenshaw and his wife in getting out of the van the night before, the court found no duty on the part of the hotel to provide such assistance. Also in *Ark. La. Gas Co. v. Stracener,* 239 Ark. 1001, 395 S.W.2d 745 (1965), the court held that the gas company's practice of locking and tagging meters did not give rise to a legal duty to do so.

 The most analagous case we have found is the decision of the Illinois Supreme Court in *Mick v. The Kroger Co.,* 224 N.E.2d 859 (Ill. 1967). There, the grocery store had a routine policy of maintaining a carry-out service for its customers. On the day in question, Ms. Mick was told that there was no one to assist her, and she carried out a thirty-pound bag of groceries herself. She fell and was injured. The issue before the court was "whether a merchant can be said to have a duty to assist customers in carrying large packages of groceries by virtue of the fact that it customarily

did so." The court answered the question in the negative, holding that the store's policy did not create a legal obligation. The court said:

> Apart from the deviation from custom, the only evidence it [lower appellate court] discussed are the facts that the bag of groceries involved in this suit was both large and heavy and that plaintiff told defendant's checkout boy that the bag was too heavy for her. This proof is, however, insufficient to create a duty upon defendant to carry her bag. When told that no assistance was available, plaintiff did not have to attempt to carry out the bag. She could have waited for her husband to return and carry out the groceries for her as she said he occasionally had done. She could have also placed the groceries in a cart which clearly was available for use. Plaintiff voluntarily purchased the groceries and chose to carry out a bag which she says she felt was too heavy for her, even though alternative courses of action were available.

*Id.* At 152-53.

In light of the case law in Arkansas that policy does not translate into a legal duty, and persuaded by the decision of the Illinois Supreme Court in *Mick,* we cannot conclude that Kroger had a duty to assist Smith to her car. In our estimation, Smith chose to take the heavily-laden cart out herself when she could have waited and asked for assistance. We hold that, as a matter of law, the trial court erred in denying Kroger's motion for a directed verdict.

We also hold that Kroger had no duty to warn Smith of any danger associated with handling a fully-loaded cart. The duty to warn an invitee of a dangerous condition applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like, in that they are known to the invitor but not known to the invitee and would not be observed by the latter in the exercise of ordinary care. *Ethyl Corp. v. Johnson,* 345 Ark. 476, 49 S.W.3d 644 (2001); *Jenkins v. Hestand's Grocery,* 320 Ark. 485, 898 S.W.2d 30 (1995). There is no duty to warn where the dangerous condition is known or obvious to the invitee. *Van DeVeer v. RTJ, Inc., supra.* In this instance, Smith herself purchased the large quantity of groceries that were loaded into the shopping cart. If there were any danger, it was an obvious one,

such that there was no duty to warn. *See, e.g., Ethyl Corp. v. Johnson, supra* (no duty to warn of potential danger of moving a large trash receptacle).

Reversed.

BAKER and ROAF, JJ., agree.