RAILROAD COMPANY *v.* DIAL.

Opinion delivered December 23, 1893.

*Railway—Duty to one assisting an employee.*

Where a boy fifteen years of age, at the request of the conductor of a freight train, undertakes to throw off the brake on a car, and is injured by striking his head on an iron bridge, he cannot recover from the railroad company on account of its negligence in failing to warn him of the danger, if the conductor had no express or apparent authority to employ him, and there was no exigency which called for the exercise of implied authority.

Appeal from Garland Circuit Court.

A. M. DUFFIE, Judge.

STATEMENT BY THE COURT.

Appellant was making up a train at its depot in the city of Hot Springs. On the yard of the company, near the depot, at a street crossing, a bridge spanned the track. Appellee, a boy fifteen years of age, was standing erect upon a freight car as it passed under the bridge, and, same being too low to admit of his passage in this position, he was struck upon the head, and knocked from the car, receiving a severe scalp wound, from which he suffered greatly, and was permanently disfigured. He sues the company for $5000, alleging that he was in-

duced to go upon the car by the conductor of appel-
lant for the purpose of throwing off a brake ; that the
car was not in motion when he ascended ; that on reach-
ing the brake he found he could not move it, and informed
the conductor, who signalled the engineer to back the
cars ; that, as soon as the brake was loosened, he threw
it off, and the cars began to move, and he made an effort
to get down, but, before he could do so, the cars had
passed under the bridge, and he was struck, and received
the injury of which he complains, which he says was
caused by the gross carelessness and negligence of the
appellant.   He says also that he had never been in the
employment of the appellant, knew nothing of the oper-
ating of said cars, or the labor incident thereto, and had
no knowledge of the height of the bridge, or that there
was danger in the task he was performing.

The appellee was the only witness on his own behalf
as to the occurrence, and his testimony, in substance as
it relates to the cause and manner of the injury, corres-
ponds with the allegations of his complaint.   He says
that a freight train was standing on the track at the
passenger depot near the intersection of Benton and
Malvern avenues in the city of Hot Springs.   He was
standing on the platform, and the conductor said:
"Lewis, get up on top of that freight car, and throw a
brake off."   He got on the car, and told the conduc-
tor he could not throw it off ; it was so tight.   The
conductor signalled the engineer, and the train was
backed two or three feet, and then went forward.   He
threw the brake off, and started to get down, and the
conductor told him not to get down ; that he might get
hurt.   The train was pulled east toward Malvern ; then
backed up and got two loaded cars, and started east
again.   He says he must have looked back up towards
town, and did not see the iron bridge at the crossing.
It struck him on the top of the head, and knocked him

off, and he did not know what happened after that. He was standing on top of the car when it went under the bridge. At the time the conductor told him to get on the car he was about ten yards off. Had gone down to the depot for the purpose of blacking boots, carrying grips, etc., which he frequently did. Was in the habit of doing so. The conductor and train men all knew him well. Used to black their boots, and help them to do other work on the cars, and they did not drive him away. They used to tell him to jump on the cars and let off the brake, and they would give him a ride. Rode on the engine one time, and on baggage car another time, to Cove Creek, and they sent him back on train. Never got on train unless told to do so by train men.

The answer of the company denied all the allegations of the complaint, and it introduced the general superintendent, the conductor, baggagemaster, engineer, fireman and brakeman. The superintendent stated that he employed all conductors and men working on all trains, and had given all conductors and trainmen orders to keep boys off the trains. The conductor and several others testified that they had orders to keep boys out of the yard and off the cars, and the conductor said he had ordered appellee off that morning. There was proof by the employees of the company that appellee was in the habit of jumping on and off the cars, that they had tried to keep him out of the yard and off of the cars, and that they had often ordered him out of the yard, and that he had made himself troublesome to them. Verdict and judgment for $500. The railroad appeals.

*J. M. Moore* for appellant.

The conductor had no authority to put plaintiff to work, or to direct or require bystanders to assist in operating the train ; and a stranger who assists in such

work cannot recover for injury sustained while engaged in such voluntary work.    38 A. & E. R. Cas. 14 ; 72 Mo. 62 ; 60 *id.* 415 ; 69 Pa. St. 213 ; 4 A. & E. R. Cas. 599 ; 68 Me. 49 ; Thomps. Neg. 1045 ; 45 Ark. 246.

*E. W. Rector* for appellee.

The conductor, although acting contrary to his *express* authority, has *implied* authority to employ appellee to do the work he was requested to do, and appellee was not a *volunteer* nor a *trespasser*, but a *servant* put in a *perilous* position *without warning or . notice.*    Wood, Mast. and Serv. (2nd ed.) p. 576 ; 83 Ala. 238 ; 3 Am. St. Rep. 715 ; 3 So. Rep. 764 ; 107 Mass. 108 ; 9 Am. Rep. 11 ; 41 *id.* 337 ; 27 Am. St. Rep. 902 ; 5 *ib.* 510 ; 16 N. W. Rep. 331 ; 7 Am. St. Rep. 432 ; 26 *id.* 927. ; 57 Am. Rep. 268.

2.    The instructions for appellee were based upon 48 Ark. 460 and 46 *id.* 423.

WOOD, J., (after stating the facts).    The controverted questions of fact are settled by the verdict in favor of appellee.    Did the court declare the law in the following instruction :    " (2) That if you believe that Louis Dial got on the cars of the defendant, at the request of Hensley, to unset the brake of said car, and that Hensley knew at the time, or had sufficient time and opportunity to know, and ought to have known, that plaintiff, when standing on the top of one of the defendant's cars, could not pass under the iron bridge without injury to himself, and did not warn plaintiff of the danger, and that plaintiff had no knowledge of the danger of his position on said car, you should find for the plaintiff in such sum as is warranted by the evidence, if you believe that Hensley had authority to employ the boy for said purpose, or that said employment came within the scope of his authority ?"

The evidence as to the conductor having no express authority to employ brakemen was not disputed.

Other instructions, conveying the same idea as to the authority of the conductor and the duty of the company, were given, and this seems to have been the theory upon which the case was tried. Another instruction was given which told the jury, "if the conductor acted *within the apparent scope of authority, etc.*" "The conductor of a railway train by virtue of his employment has, ordinarily, no authority to bind the corporation by a contract. But as he is invested with authority to control all the movements of the train, and is bound to look out for the safety and reasonable comfort of the passengers, exigencies may arise in which, by virtue of his position, he may make contracts which would be binding upon the corporation, where they became indispensably necessary for the performance of his duties." Wood on Railways, 449.

The proof shows that the conductor had no power to employ brakemen. The extent of his express authority was to control the movements of his train with such subalterns as were furnished him by the superintendent, who "employed all men working on all trains" of the company. As the agent of the company, to the conductor was delegated the power to control the movements of his train. To effectuate this main purpose which the corporation had in view in his employment, he would have the implied authority to do all things reasonably necessary. Mechem on Agency, 281, 311.

No exigency had supervened, no urgent circumstances were shown; nothing to call for the exercise of implied authority.

But the company would be liable, notwithstanding the conductor, in calling upon appellee, acted contrary to positive instructions, if in so doing he was within the scope of authority which it had caused or permitted him

to appear to possess, *i. e.* the apparent scope of his authority. But here again the proof fails to show "any direct act, negligent omission, or acquiescence" on the part of the company that could be legitimately construed by appellee or any one else as conferring power upon conductors to call in boys to the assistance of the regularly employed brakemen of the company.

The application of principles, fundamental and axiomatic, concerning the express, implied, or apparent authority of agents to bind their principals, to the case under consideration, very clearly fixes the status of the appellee to appellant, and determines the degree of care which the latter must exercise. This boy was not of such a tender age as to be incapable of exercising ordinary care and reasonable diligence for his own protection. He was ten yards away, and under no obligations or restraint to obey the commands of the conductor. He was too diligent to hear and accept the invitation of one who had no authority to invite him. His assistance was not needed, and, in thus going where he had no right to be, he became technically a trespasser. The appellee then owed him no positive duty of care, and only the negative duty not to injure wilfully, wantonly, or by gross negligence. The law governing this case, as thus announced, will be found supported by the following authorities : *Eaton* v. *Delaware, etc. R. Co.* 57 N. Y. 382 ; *Fleming* v. *Brooklyn R. Co.* 1 Abbot's N. C. 433 ; *Kentucky Central R. Co.* v. *Gastineau's Admr.* 83 Ky. 121 ; *Duff* v. *Allegheny R. Co.* 36 Am. Rep. 675 ; *New Orleans, etc. R. Co.* v. *Harrison,* 48 Miss. 112 ; cases cited in Pierce on Railroads, 370 ; *St. L., I. M. & S. R. Co.* v. *Bennett,* 53 Ark. 208 ; *Flower* v. *Pa. R. Co.* 69 Pa. St. 216 ; *Georgia Pac. R. Co.* v. *Propst,* 4 So. Rep. 711 ; *Snyder* v. *Railroad Co.* 60 Mo. 415 ; *St. Louis, I. M. & S. Ry. Co.* v. *Ledbetter,* 45 Ark. 246 ; *Osborne* v.

*Railroad,* 68 Me. 49; Thompson on Negligence, 1045; *Degg* v. *Midland R. Co.* 1 H. & N. 773.

The learned counsel for appellee in his exhaustive brief, which we have fully examined and considered, has based his able argument upon hypotheses not justified by the evidence, and the court below erred in adopting that view of the law upon the facts proven.     It is unnecessary to pass upon the other points presented, as the case was tried upon the theory above discussed.

Reversed and remanded.