HENRY QUELLMALZ LUMBER & MANUFACTURING COMPANY *v.* HAYS.

Opinion delivered March 14, 1927.

1. MASTER AND SERVANT—SERVANT EMPLOYING BYSTANDER.—Where an employee had no authority, express or implied, to call on a bystander to help in discharging a service which he can reasonably perform, a third person undertaking at his request to help him in performing his duties, when no emergency or pressing necessity exists, was a volunteer, to whom the employer owed no higher duty than to refrain from injuring him after discovering his peril.

2. MASTER AND SERVANT—EMERGENCY EMPLOYMENT.—If an unforeseen emergency arises rendering it necessary in the employer's

interest that his employee have temporary assistance, the law implies authority to procure such necessary help, and an assistant so procured is entitled to the same protection as any other employee.

3. MASTER AND SERVANT—EMERGENCY EMPLOYMENT.—Whether circumstances constitute an emergency authorizing an employee to procure temporary assistance, so as to entitle the assistant to the same measure of protection as other employees, is generally a jury question.

4. MASTER AND SERVANT—EMERGENCY EMPLOYMENT—BURDEN OF PROOF.—To recover from an employer for injuries to plaintiff assisting an employee at the latter's request, plaintiff must establish the relation of master and servant between himself and defendant by showing the employee's authority to call for assistance.

5. MASTER AND SERVANT—EMERGENCY EMPLOYMENT.—The mere fact that the employment of an assistant would facilitate the master's business would not give an employee authority, in absence of an emergency, to employ an assistant.

Appeal from Randolph Circuit Court; *John C. Ashley*, Judge; reversed.

STATEMENT BY THE COURT.

William Hays, a minor, by his next friend, John Hays, and John Hays instituted this action against the Henry Quellmalz Lumber & Manufacturing Company to recover damages on account of personal injuries which are alleged to have been received by William Hays while in the employment of the defendant. The suit was defended on the ground that William Hays was a volunteer at the time that he received his injuries, and that the defendant was not liable for damages therefor.

According to the evidence of the plaintiff, William Hays was eighteen years of age at the time he received the injuries sued for. On the morning in question he had been working for the railroad, loading cotton, at Datto, in Clay County, Arkansas. During the afternoon he went to the gin of the defendant. His uncle, Luther Denton, was running one of the gin stands, and asked William Hays to unchoke it. William Hays helped him lift the breast and then began to help unchoke the gin stand. He pulled out two or three little bunches of cot-

ton, and reached back to pull out another one, and, while doing so, one of his hands was caught in the machinery and injured so that it had to be amputated. William Hays had never had any experience in operating a gin and did not know whether the saws were running or not when he began to assist his uncle in removing the cotton from the gin stand.

According to the evidence for the defendant, Earl Day was the manager of the defendant's gin at Datto and employed Luther Denton and the other employees. Luther Denton was a ginner, and did not have authority to employ any one for any purpose. The defendant operated two gin stands, which were about three feet apart. If one of the gin stands became choked the ginner could call on the operator of the other gin stand to help him unchoke it. There was another employee who worked at the press who might have been called on to help unchoke either of the gin stands. On the day that William Hays was injured, the ginners were running damp cotton through the gin stands, and this had a tendency to cause them to choke. The capacity of the gin was twenty to twenty-five bales a day. When the gin stand became choked, the ginner might call one of the other employees to help him unchoke it. The breast weighed about 130 pounds, and was very bulky. While one man could lift it up, two could perform that service much easier and better. On the day in question the defendant did not have enough cotton to keep it going all day. It had been running all day, and the cotton that was ginned was wet. The defendant only ginned four bales the day that William Hays was injured, and this was all wet cotton. The other gin stand was not choked at the time William Hays was injured, and E. E. Hawkins, who operated it, could have helped unchoke the gin stand operated by Luther Denton if he had been called upon to do so.

From a verdict and judgment in favor of the plaintiff, William Hays, the defendant has duly prosecuted an appeal to this court.

*Oliver & Oliver,* for appellant.

*Walter L. Pope* and *T. W. Campbell,* for appellee.

HART, C. J., (after stating the facts). It is not claimed that Luther Denton had any authority, express or implied, to call upon bystanders to help him in the discharge of any service which he could reasonably perform. If a third person undertook, at his request, to help him in performing his duties as ginner, when no emergency or pressing necessity existed, such third person would, in the eyes of the law, be deemed a volunteer, and the defendant would owe him no higher duty than to refrain from injuring him after he discovered his peril. It is claimed, however, by counsel for the plaintiff, that, under the evidence adduced by the plaintiff, he was what is called an emergency helper or employee at the time he was injured.

The law on the question in 18 R. C. L. § 85, page 58, is stated as follows: "If an unforeseen contingency or emergency arises, rendering it necessary in the employer's interest that his employee have temporary assistance, the law implies authority to procure such necessary help; and a substitute or assistant procured under these circumstances is entitled to the same measure of protection as any other employee in the service. It is the emergency that gives rise to the implied authority, and if it does not in fact exist then neither does the implication of authority arise. Whether the circumstances of any particular case constitute what may be deemed an emergency is generally a question for the jury's determination." To the same effect see 39 C. J., page 554, § 662(bb).

This view of the law has been substantially sanctioned and followed by this court. *Railroad Co.* v. *Dial,* 58 Ark. 318, 24 S. W. 500; *St. L. I. M. & S. Ry. Co.* v. *Jones,* 96 Ark. 558, 132 S. W. 626, 37 L. R. A. N. S. 418; and *Yazoo & Mississippi Valley Rd. Co.* v. *Kern,* 99 Ark. 584, 138 S. W. 938. In these cases the court recognized that the fact that no real emergency and no actual necessity for extra help existed may be taken into considera-

tion by the court in deciding whether or not the person injured was in the position of a servant.

Tested by these principles of law, it was necessary for William Hays to establish as a basis of his recovery the existence of the relation of master and servant between himself and the defendant company; and this, in turn, depended upon the authority of the ginner, under the circumstances, to call him to assist in lifting up the breast of the gin stand and unchoking it. It was wholly immaterial whether or not the assistance of the plaintiff would tend to facilitate the business of the defendant or to make it easier for the ginner to unchoke the gin stand. Such facts would not give the ginner authority to employ additional help. There must be a sudden or unexpected emergency which would imperil the ginner or threaten harm to the gin stand in order to give implied authority to the ginner to employ temporary assistance.

The undisputed evidence shows that there was no sudden or unexpected emergency which would give the ginner the implied authority to employ a temporary assistant to help him unchoke the gin stand. If he thought that the breast of the gin stand was too heavy and bulky to lift up, he might have called to his assistance the other ginner, who was not more than three feet from him, or another employee who was working near by. The servant who had general control and management of the gin had not directed him to speed up his work. On the other hand, the undisputed evidence shows that there was no necessity to do that. The defendant was up with its ginning, and there was no necessity whatever to speed up the work. The evidence does not show that the gin stand had been choked to an extent where it was dangerous to operate it or where it was liable to break. The power might have been cut off at any time, and the ginner might have proceeded at his leisure to unchoke the gin stand. Hence there was no sudden or unexpected emergency calling for outside assistance, and the plaintiff, in helping in the work, was in law a volunteer and not entitled to recover damages against the defendant for

injuries received, under the circumstances detailed by him in his testimony.

It is true that the plaintiff's hand was injured to such an extent that it had to be amputated. This of itself makes it a very hard case. The plaintiff, however, had arrived at the years of discretion, and knew what he was about. Our sympathy for him cannot cause us to override settled rules of law and to deviate from fixed legal principles, which those engaged in business have a right to rely upon in conducting it.

The result of our views is that the court erred in not directing a verdict in favor of the defendant, as requested by its counsel, and, for that error, the judgment must be reversed. Inasmuch as the plaintiff seems to have fully developed his case, his cause of action will be dismissed.