William G. ABERNATHY and Anne Abernathy,
his Wife, d/b/a Wonder City, Inc. *v.*
Kenneth J. KNYCH; Wonder City Restaurant, Inc.;
Kenneth J. Knych, Inc.; Michael Freyaldenhoven;
and William Kendall Thomas

CA 00-1225                                        61 S.W.3d 207

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered December 5, 2001

*Lyons, Emerson & Cone, P.L.C.*, by: *Jim Lyons*, for appellants.

*Durrett & Coleman*, by: *Gerald A. Coleman*, for appellees.

SAM BIRD, Judge. Appellants William G. (Bill) and Anne Abernathy, husband and wife, doing business as Wonder City, Inc., bring this appeal from an order of the Circuit Court of Crittenden County, which granted a motion for directed verdict in favor of appellees, Kenneth J. Knych, Inc., Wonder City Restaurant, Inc., and Kenneth J. Knych, Michael Freyaldenhoven and William Kendall Thomas, individually. From our review of the record, considering the evidence in the light most favorable to appellants, we hold that substantial evidence was presented by appellants that would support a finding by the jury that appellees' contract with Schneider National Carriers for the operation of a cafeteria was terminated for cause. Accordingly, we reverse and remand for a new trial.

The appellants in this case operated a restaurant under the name of Wonder City, Inc., and had entered into an agreement with Schneider National Carriers, which is a trucking firm, to provide Schneider with cafeteria services at its trucking station in West Memphis. The appellants sold their restaurant business on June 30, 1995, to appellees. Under the contract of sale, the appellees were granted the right to continue to provide cafeteria services to Schneider's West Memphis Center and, in return, appellees agreed to pay to the appellants six percent of the gross sales of the cafeteria operation at Schneider for a ten-year period. The contract also provided:

> in the event the Schneider National Carriers Cafeteria operation is lost by them for cause, [appellees] individually shall be liable to Seller in the amount of $150,000.00 for the first year of loss and said liability shall be reduced ten percent (10%) for each year of the remaining ten (10)-year contract in the Schneider National Carriers' phase of said contract.

On July 1, 1995, appellees began operating the cafeteria for Schneider. On February 13, 1996, Schneider entered into a written contract with appellees for the operation of the cafeteria at Schneider's West Memphis trucking center. Among other things, this contract provided:

> 1.1 Term. The initial term of this Agreement is one (1) year from the Effective Date. This Agreement shall continue after the initial one (1) year term on a month to month basis until terminated by either party with or without cause on sixty (60) days prior written notice. After the initial one year term, the parties may

adjust the specific terms, commissions or guarantees of this Agreement where circumstances beyond the control of either party require adjustments.

1.2 Termination for Cause. Notwithstanding Section 1.1, in the event that either party defaults in the performance of any of its duties or obligations under this Agreement, which default is not cured within ten (10) days after written notice thereof is given to the defaulting party by the non-defaulting party specifying the default, then the party not in default may, by giving written notice thereof to the defaulting party, immediately terminate this Agreement.

On January 7, 1998, Schneider notified appellees by letter that it was terminating its contract with them, effective sixty days thereafter. Because the appellees refused to pay to appellants the money that the appellants believed was due under the June 30, 1995, contract because of its termination, appellants filed a complaint against appellees, alleging that Schneider's termination of its contract with appellees was for cause. Therefore, appellants alleged, appellees were obligated to pay to appellants, in accordance with the formula set forth in their contract, the sum of $120,000.

During the jury trial, Bill Abernathy testified that he was the former owner of Wonder City Cafeteria. He stated that he began working with Schneider by providing catering service for its driver appreciation events, called "handshakes." Schneider completed its new cafeteria facility at its truck stop location and entered into an agreement under which Abernathy agreed to also provide food services for Schneider's West Memphis cafeteria.

He testified that he sold all of the real estate, building, furnishings, and equipment of Wonder City Cafeteria to the appellees. In addition, he stated that he sold appellees the right to provide food services to Schneider's cafeteria. Abernathy testified that appellees lost the right to operate the Schneider cafeteria for cause during the third year that they were in business and that, pursuant to the contract, appellees owed him $120,000.

Abernathy stated that the cafeteria was initially run "pretty well" under the managership of appellee Michael Freyaldenhoven. However, he stated that when Ed Camper began managing the cafeteria, problems began to arise, i.e., more drivers began complaining about the lack of service, lack of food, the temperature of the food, the cleanliness of the facilities, and the lack of the use of

gloves. Abernathy said that under the contract, he was to have the right of approval over certain matters concerning the operation, but that appellees never sought his approval on any matters. He said that when he offered the appellees suggestions about the cafeteria's operation, he was ignored to the point that he finally stopped telling them anything.

Abernathy stated that in August 1996, he received a letter from Doug Helton, Operation Support Manager for Schneider, in which Schneider placed appellees on a forty-five day probation period for having received no response from appellees regarding complaints. The letter stated that if the problems that were detailed in the letter were not improved upon, the company would find a new vendor. Abernathy stated that after he learned that the contract might be terminated, he spoke to appellees Knych and Thomas, but that no changes in the operation of the restaurant occurred.

Through Abernathy's testimony, the appellants introduced a copy of Schneider's letter informing appellees that their contract was to be terminated in sixty days. In addition to notifying appellees of the termination of the food service agreement, Schneider's letter informed appellees that "there were service and quality issues that Schneider was looking to improve upon."

On cross-examination, Abernathy admitted that he was aware that Best Vendors had been hired by Schneider to oversee their entire cafeteria operation and that Best Vendors was taking bids on the operation. He also admitted that he had made a bid on the operation but had not informed appellees and that Best Vendors had changed the terms of the operation of the cafeterias by requiring the operator to pay rent for use of the cafeteria space and to pay Schneider a percentage of the gross sales. Additionally, he admitted that when he operated the Schneider cafeteria, he had not had to pay Schneider rent or a percentage of his gross profits, and that appellees' contract with Schneider did not require such payments.

Two former employees of the Abernathys, who worked for appellees after the restaurant business was sold, testified that after appellees took over the business, the food quality at Schneider's restaurant deteriorated because appellees quit using some seasonings and spices that should have gone into the food, switched from fresh to frozen vegetables, prepared food from day-old meat, and often re-used food a second day. One of the employees also testified that

under appellees' management, there were often delays in the preparation and serving of food because they would run out of food products, and that they frequently ran out of cleaning supplies.

Janice Brewer testified that she had worked as the operating manager of Schneider's trucking center in West Memphis from 1991 until 1998. She said that although she left Schneider in March 1998, she was familiar with the cancellation of Schneider's contract with appellees because the contract was terminated prior to her departure. She testified that during the time that she managed the Schneider trucking center, Schneider held quarterly celebrations for its drivers, called "handshakes," and that prior to his sale of the business, Abernathy had provided the food for those events. She said that Abernathy began providing the food service to Schneider's cafeteria about the time she began managing the center.

Brewer testified that after the Abernathys sold their rights to operate the restaurant to the appellees, the cafeteria was operated in about the same manner as Abernathy had operated it until about November 1995, when the cafeteria came under the management of Ed Camper. Brewer said that Camper had another job and was not around the cafeteria very often. She said that in 1996 she began to receive complaints from drivers about the operation of the cafeteria. According to Brewer, the complaints included "rudeness, not being waited on, dirty dishes, dirty cooking area, no onsite manager, no chemicals for the dishwasher, servers eating in the kitchen food prep area, servers and cook not wearing gloves or hair nets, not charging the correct price and equipment not being properly cleaned and the employees not wearing uniforms." In addition, Brewer stated that Camper had committed to catering a "handshake," and that the event was "poorly planned," because there was no food at the event. She said that a vice-president of Schneider corporation was in town for the handshake and, because of appellees' performance, the vice-president stated, "get rid of these people."

Brewer testified that in August 1996, a letter was sent to appellees from Schneider's national operations support manager expressing concerns about recurring problems that had been encountered in the operation of the cafeteria. The letter, introduced into evidence without objection, stated that Camper had been made aware of the problems but that no improvements had been made. The letter stated that appellees were being put on forty-five days probation and that a meeting would be scheduled within seven days to discuss corrections that must be made immediately or a new vendor

would take over the cafeteria's operation. Brewer recalled that the meeting was held around the first of September 1996, and that appellees Knych and Thomas were late. She said that at the meeting, Knych and Thomas were very apologetic and promised to solve the problems. She said that the situation improved briefly, but that "then it started going down again."

Brewer testified:

> During 1997, I wanted them out of there. I wanted to terminate them for cause. This decision was made sometime during 1997, but the actual termination letter did not occur until January 7, 1998.
>
> There was conversation with the Schneider people in Green Bay and as a result of the conversation, the letter dated January 7, 1998, was sent as opposed to a letter stating that termination was for cause. . . . I discussed with Bill Abernathy that I was going to terminate the contract with Mr. Knych and Mr. Thomas for cause in 1997.

On cross-examination, Brewer testified that she was the person in charge of the cafeteria at the Schneider trucking center, that she had the authority to make the decision whether to terminate the contract, and that she told Bill Abernathy in 1997 that she was going to terminate the contract for cause.

She also stated that Best Vendors was going to take bids for the operation of all ten of Schneider's cafeterias and that the cafeteria at the West Memphis center was going to be the first one bid, "in order to get the operators out of there." Brewer stated, "Schneider terminated the contract with Wonder City for cause." However, she stated that even though Schneider informed her that they were going to send a "for cause" termination letter, the contract was terminated pursuant to the sixty-day provision.

At the end of Brewer's testimony, appellees moved for a directed verdict, stating that appellants had presented no evidence that the contract was terminated for cause. The court granted the motion, stating:

> Although plaintiff argued that the contract was terminated because of bad services and bad supervision, that was not the reason given. The easy way was used, which the contract gave them an option to do. It was an at will termination with 60 days notice. Additionally,

there was the modification. The modification of the terms of the anticipated contract modified any profits that would have been realized as a result of it. This would have been grounds for recission of the contract in the first place. For those two reasons, there was not a jury question.

Appellants bring this appeal, contending that the court erred in directing a verdict in appellees' favor because there was substantial evidence presented that the appellees' contract with Schneider was terminated for cause. The testimony presented, appellants argue, unquestionably created a fact question.

■ In ruling on a motion for directed verdict, the trial court views the evidence most favorably to the nonmoving party and gives that evidence its highest probative value, taking into account all reasonable inferences deducible from it. *Dorton v. Francisco*, 309 Ark. 472, 833 S.W.2d 362 (1992). The motion should only be granted where the evidence is so insubstantial as to require that a jury verdict for the nonmoving party be set aside. *Id.* On the other hand, if there is substantial evidence to support the jury verdict, the motion should be denied. *Id.* Substantial evidence is evidence of sufficient force and character that it will compel a conclusion one way or the other and it must induce the mind to pass beyond mere suspicion or conjecture. *Id.*

■ In determining whether a directed-verdict motion should have been granted, the appellate court reviews the evidence in the light most favorable to the party against whom the verdict is sought and gives it its highest probative value, taking into account all reasonable inferences deducible from it. *Morehart v. Dillard Dep't Stores*, 322 Ark. 290, 908 S.W.2d 331 (1995). Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *Id.*

We do not agree with the trial judge's conclusion that Schneider's use of the sixty-day notice provision to accomplish the termination of its contract necessarily precludes a jury finding that the termination was for cause. Although the Schneider contract contained two procedures by which the contract could be terminated, either one of them could be used to terminate the agreement for cause. Section 1.1 of the contract provided that the contract could be terminated by either party "with or without cause on 60 days prior written notice." Section 1.2 provided that if either party defaulted in its performance of the agreement and the default was

not cured within ten days after written notice, the non-defaulting party could give written notice of its immediate termination of the agreement. Under either section 1.1 or 1.2, the contract could be terminated for cause. The only significant difference in the sections is the length of time to elapse between the notice and the termination.

The testimony of Janice Brewer is certainly substantial evidence that the contract was terminated for cause. The January 7, 1998, letter from Schneider to appellees, giving the sixty-day notice and stating that there were "service and quality issues" upon which Schneider wished to improve, is substantial evidence that the agreement was being terminated because Schneider was dissatisfied with appellees' performance of the food service agreement. Additionally, inferences could be drawn from the testimony of the former employees about the decline in the quality of the food and services at Schneider's cafeteria that support a conclusion that Schneider terminated the contract because of dissatisfaction with appellees' services.

■ Viewing this evidence in the light most favorable to appellants, giving it the highest probative value, and taking into account all reasonable inferences deducible therefrom, we find that fair-minded people might reach different conclusions. Whether this evidence establishes that Schneider's termination of its contract with appellees was for cause is a question for the jury to answer. Consequently, we hold that the trial court erred in granting a directed verdict in favor of the appellees.

Reversed and remanded.

ROBBINS, GRIFFEN, CRABTREE, and BAKER, JJ., agree.

ROAF, J., dissents.

ANDREE LAYTON ROAF, Judge, dissenting. I would affirm the trial court's grant of a directed verdict to appellees on the issue of whether or not their contract with a third party for the operation of a truck-stop-type cafeteria was terminated "for cause" three years into their ten-year agreement to pay appellants a percentage of the cafeteria's annual profits. Despite the voluminous testimony and evidence regarding the many problems that appellees had with operating the cafeteria to the satisfaction of third-party Schneider National Carriers, it was uncontroverted that prior to termination of the appellees' contract, Schneider had hired a new

manager, Best Vendors, and had decided to let all of its string of ten in-house cafeterias out for new bids under significantly different terms more advantageous financially to Schneider and less desirable to appellees. Schneider was free to do this, as its contract with appellees was then on a month-to-month basis and terminable by either party with or without cause on 60 days' prior written notice. It was also uncontroverted that both appellants and appellees bid on the new contract, but neither was chosen by Schneider. The actual termination letter was sent to appellees *after this bidding process* and was effective at the end of 60 days, which was also the end of appellees' contract. Consequently, it is irrelevant that Schneider could have terminated the appellees' contract for cause because it simply elected not to do so.

Of course, appellants could have argued that this entire rebidding process could reasonably be construed by the jury as a pretext to get rid of appellees without resorting to the "for cause" termination procedure. However, there is no evidence or testimony whatsoever to support such an inference, unless former Schneider employee Janice Brewer's testimony that appellees' cafeteria was to be the first one rebid "to get the operators out of there," would provide a sufficient basis from which the jury could reach this conclusion. The jury would then also have to conclude that appellees' termination became one "for cause," on account of being the first to be rebid. However, appellants do not argue for this construction of the evidence. Moreover, we can go to the record to affirm, and there are several pieces of evidence of this rebidding process in the record not contained in the appellants' abstract.

Indeed, the trial court carefully considered the evidence before it, including evidence and testimony about the rebidding process, and concluded:

> They chose to terminate without giving any reason for the termination. If paragraph 1.1 and 1.2 have any common sense meaning, the cause meant for cause. If it was cause, it could have been for cold food, not enough food, a thousand different reasons. Also, the terms and conditions of the original contract are being modified by the new overall food service people. This completely and totally altered the relationship between Mr. Abernathy and the new Wonder City people. They were paying him a six percent (6%) surcharge and under the new terms were going to be compelled to pay Best Vendors an additional amount of compensation plus they were going to have to pay rent on the facility. That totally and completely in and of itself altered the original agreement. They

would have no control over those two factors whatsoever and theoretically, if they were granted the contract, at least a modification of the original agreement between Mr. Abernathy and his purchasers. For those two reasons, the motion for directed verdict was granted.

. . . .

Although [appellants] argued that the contract was terminated because of bad service and bad supervision, that was not the reason given. The easy way was used, which the contract gave them an option to do. It was an at-will termination with 60 days notice. Additionally, there was the modification. The modification of the terms of an anticipated contract modified any profits that would have been realized as a result of it. This would have been grounds for recission of the contract in the first place. For those two reasons there was a not a jury question.

I fully recognize that, in addressing the issue of whether a directed verdict should have been granted, we must review the evidence in the light most favorable to the party against whom the verdict is sought and give it the highest probative value, taking into account all reasonable inferences deducible from it. *Martin v. Hearn Spurlock, Inc.,* 73 Ark. App. 276, 43 S.W.3d 166 (2001). Where the evidence is such that fair-minded people might have different conclusions, then a jury question is presented and the directed verdict should be reversed.

In this instance, I cannot say that fair-minded people could conclude other than exactly the way the trial court saw this evidence. It is the fact that the cafeterias were rebid and not the new financial terms that is significant. Appellees would have had to bear the consequences of any new, less advantageous financial terms had they been awarded the contract with Schneider because their agreement with appellants made no provision for such an occurrence. However, the agreement also did not adequately protect the appellants' rights to profits for the full ten years, where only a month-to-month contract was involved, and no amount of testimony about appellees' shortcomings as cafeteria operators can overcome that omission. I would affirm.