The Honorable Dan Greenberg State Representative 55 Fontenay Circle Little Rock, Arkansas 72223-9569
Dear Representative Greenberg:
I am writing in response to your request for an opinion regarding various questions I will paraphrase as follows:
 1. Is it correct to interpret the Good Samaritan Act, prior to its 2007 modifications, as requiring an individual to act as a reasonable and prudent person would have acted under the circumstances in order to be covered under the act? Absent any statutory protections, did the pre-2007 Good Samaritan Act provide immunity from tort liability for a person acting as a reasonable and prudent person would have acted under the circumstances?
 2. Did the pre-2007 Good Samaritan Act add anything to the common-law protections that Arkansans already had from civil liability? If so, what?
 3. If the pre-2007 Good Samaritan Act did not add anything to the common-law protections that Arkansans already had from civil liability, was that law essentially without legal effect?
 4. In your opinion, is the analysis of Arkansas's pre-2007 Good Samaritan Act by the New Jersey Supreme Court in Velazquez v. Jimenez, 172 N.J. 240, 798 A.2d 51 (2002) (stating that the law did "not provide immunity at all"), generally correct?
 5. In your opinion, what, if anything, was the nature and extent of any immunity or protection offered by the Good Samaritan Act prior to 2007? *Page 2 
RESPONSE
In my opinion, the answers to the two parts of your first question are "yes." I should note, however, that the pre-2007 Good Samaritan Act clearly extended beyond the scope of common law the scope of protection to "a physician or surgeon who in good faith and without compensation rendered voluntary emergency assistance to a participant in a school athletic event or contest at the site thereof or during transportation to a health care facility for an injury suffered in the course of the event or contest." Specifically, the Act extended immunity to a treating physician or surgeon under these circumstances except in the case of an act or omission constituting gross negligence. With respect to your second and third questions, I consider it unclear precisely how, if at all, the pre-2007 Good Samaritan Act extended the scope of common-law protection beyond that discussed in my response to your first question. In light of this answer, I am unable to opine whether the court case referenced in your fourth question accurately summarized the effect of the pre-2007 Good Samaritan Act in instances other than those involving athletic injuries treated by a physician or surgeon. I will note, however, both that dictum by the supreme court of a sister state is not binding in Arkansas and that the Arkansas General Assembly apparently felt that it was extending the scope of common-law protection in enacting the pre-2007 Good Samaritan Act. Your fifth question is answered in my response to your first question.
Question 1. Is it correct to interpret the Good Samaritan Act, priorto its 2007 modifications, as requiring an individual to act as areasonable and prudent person would have acted under the circumstancesin order to be covered under the act? Absent any statutory protections,did the pre-2007 Good Samaritan Act provide immunity from tort liabilityfor a person acting as a reasonable and prudent person would have actedunder the circumstances?
I must note at the outset that while I am required to provide my opinion on certain matters of law to members of the General Assembly and various state officials (see A.C.A. § 25-16-706 (Repl. 2002)), I am prohibited from engaging in the private practice of law. A.C.A. §25-16-701 (Repl. 2002). The ensuing discussion should consequently not serve as the basis for pursuing a private cause of action. *Page 3 
Prior to its amendment in 2007 pursuant to Acts 2007, Nos. 683, § 1 and 1038, § 1, the Good Samaritan Act was codified at A.C.A. § 17-95-101
(Repl. 2002) as follows:
 (a) Any person licensed as a physician or surgeon under the laws of the State of Arkansas or any other person, who, in good faith lends emergency care or assistance, and who was acting as a reasonable and prudent person would have acted under the circumstances present at the scene at the time the services were rendered, shall not be liable for any civil damages for acts or omissions performed in good faith.
 (b) Any person who is not a physician, surgeon, nurse, or other person trained or skilled in the treatment of medical emergencies who is present at an emergency or accident scene, and who:
 (1) Believes that the life, health, and safety of an injured person or a person who is under imminent threat of danger could be aided by reasonable and accessible emergency procedures under the circumstances existing at the scene thereof;
 (2) Proceeds to lend emergency assistance or service in a manner reasonably calculated to lessen or remove the immediate threat to the life, health, or safety of such a person;
 (3) Lends only such emergency care or assistance as a reasonable and prudent person concerned for the immediate protection of the life, health, and safety of the person for whom the services were rendered would lend under the circumstances
 shall not be held liable in civil damages in any action in this state for any harm, injury, or death of any such person so long as the person rendering such services acted in good faith and was acting as a reasonable and prudent person would have acted under the circumstances present at the scene at the time the services were rendered.
 (c) No physician or surgeon who in good faith and without compensation renders voluntary emergency assistance to a *Page 4 
participant in a school athletic event or contest at the site thereof or during transportation to a health care facility for an injury suffered in the course of the event or contest shall be liable for any civil damages as a result of any acts or omissions by the physician or surgeon in rendering the emergency medical care. The immunity granted by this subsection shall not apply in the event of an act or omission constituting gross negligence.
 (d) For the purposes of this section and any other law of this state which takes effect on or after January 1, 1994, the term "physician" shall mean a person licensed by the Arkansas State Medical Board, the Arkansas State Board of Chiropractic Examiners, or the State Podiatry Examining Board.
As your question suggests, this statute contains the coinage "as a reasonable and prudent person would have acted" several times in defining the standard of care applicable to an individual rendering emergency services. Specifically, subsection (a) of the former statute imposes this requirement with respect to licensed physicians and surgeons; subsection (b) of the former statute imposes this requirement with respect to any other individual who renders emergency assistance.
I must note, however, that subsection (c) of the former statute expressly provides that a physician or surgeon who in good faith and without compensation renders emergency assistance to a participant in a school athletic event or contest for an injury suffered therein will face potential liability for acts or omissions in his emergency treatment only if his treatment constitutes "gross negligence." Moreover, the phrase "reasonable and prudent person" as used in subsection (a) is somewhat ambiguous inasmuch as it is unclear whether this phrasing refers to a "reasonable or prudent" physician or surgeon or whether it refers to any "reasonable or prudent" individual.[1] If the former reading is appropriate, subsection (a) would appear to have afforded physicians and surgeons little, if any, protection under the Good Samaritan law, given that the standard would appear to *Page 5 
be only coextensive with that applicable to any physician treating a patient.[2] See discussion below. Assuming the legislature intended the standard set forth in subsection (a) to provide physicians and surgeons a degree of protection greater than that available at common law, it may be that the "reasonable or prudent" standard was not intended to embrace a standard of professional care.[3] *Page 6 
This language is indeed reminiscent of the requirement to avoid liability for negligence in performing a duty at common law. As the court noted in Arkansas Kraft v. Cottrell, 313 Ark. 465, 470-71,855 S.W.2d 33 (1993):
 To establish a prima facie case of negligence, the plaintiff must show that he sustained damages, that the defendant was negligent, and that such negligence was a proximate cause of the damages. We recently set forth in Sanford v. Ziegler, 312 Ark. 524, 851 S.W.2d 418 (1993), the essential elements of negligence which must be proved for a plaintiff to prevail:
 Negligence is the failure to do something which a reasonably careful person would do. A negligent act arises from a situation where an ordinarily prudent person in the same situation would foresee such an appreciable risk of harm to others that he would not act or at least would act in a more careful manner. White River Rural Water Dist. v. Moon, 310 Ark. 624, 839 S.W.2d 211 (1992). Register v. Oaklawn Jockey Club, Inc., 306 Ark. 318, 811 S.W.2d 315
(1991); Earnest v. Joe Works Chevrolet, Inc., 295 Ark. 90, 746 S.W.2d 554 (1988). *Page 7 
As further noted in Dorton v. Francisco, 309 Ark. 472, 479,833 S.W.2d 362 (1992): "[N]egligence includes both a duty or standard of conduct and a failure to conform to that conduct." As noted in the leading case of Young v. Paxton, 316 Ark. 655, 660, 873 S.W.2d 546 (1994):
 The law of negligence requires as essential elements that the plaintiff show that a duty was owed and that the duty was breached. Earnest v. Joe Works Chevrolet, Inc., 295 Ark. 90, 746 S.W.2d 554 (1988); Keck v. American Employment Agency, Inc., 279 Ark. 294, 652 S.W.2d 2 (1983); Union Securities Co. v. Taylor, 185 Ark. 737, 48 S.W.2d 1100 (1932); Prosser and Keaton on the Law of Torts, § 30, p. 164 (5th Ed. 1984).
See James Lockhart, Causes of Action Against Emergency MedicalTechnician or Emergency Medical Care Service for Improper Response to orImproper Treatment of Medical Emergency, 8 COA2d 415 (2007) (generally discussing the relationship between common-law tort liability and the greater protection available to emergency-care providers in many jurisdictions); Danny R. Veilleux, Construction and Application of "GoodSamaritan" Statutes, 68 A.L.R.4th 294 (2008) (comparing the range of protection under Good Samaritan statutes in various jurisdictions).
In light of the foregoing, it is difficult to state with any strong degree of confidence precisely what degree of protection the legislature intended to afford volunteer emergency-care providers under the Good Samaritan Act prior to its 2007 amendment. Specifically in response to the second part of your question, although I am unsure precisely what you mean by the qualifier "[a]bsent any statutory protections," I can and will opine that the pre-2007 Good Samaritan Act indeed provided tort immunity "for a person acting as a reasonable and prudent person would have acted under the circumstances." However, as the foregoing discussion should suggest, it is not entirely clear what the scope of the "reasonable and prudent person" standard was under this legislation. A reflected in the emergency clause to Acts 1969, No. 46, § 3, the original intent of the Arkansas Good Samaritan law was to encourage emergency assistance at the scene of an accident to an extent that apparently exceeded purely common-law protections:
 [T]he present law of the State relative to the liability of persons for acts or omissions while rendering emergency care or assistance to others is inequitable and tends to discourage emergency assistance to *Page 8 
persons in need thereof, and that this Act is immediately necessary to correct this inequity. . . .
As this passage reflects, the General Assembly obviously felt that its action in enacting Act 46 in some manner extended the protection available at common law. The precise extent of this protection is frankly unclear on the face of the statute, and it has not been the subject of judicial clarification. Absent legislative or judicial clarification, I am unable to opine on the exact scope of the former statute.
Question 2: Did the pre-2007 Good Samaritan Act add anything to thecommon-law protections that Arkansans already had from civil liability?If so, what?
As reflected in my response to your first question, the answer to your inquiry is unclear.
Question 3: If the pre-2007 Good Samaritan Act did not add anythingto the common-law protections that Arkansans already had from civilliability, was that law essentially without legal effect?
As reflected in my responses to your previous questions, the answer to this question is not entirely clear. As a general proposition of construction, the Arkansas courts have long held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty,336 Ark. 479, 484, 987 S.W.2d 257 (1999); Lawhon Farm Servs. v. Brown,335 Ark. 272, 948 S.W.2d 1 (1998); Citizens To Establish A Reform Party v.Priest, 325 Ark. 257, 926 S.W.2d 432 (1996); Henson v. Fleet MortgageCo., 319 Ark. 491, 892 S.W.2d 250 (1995); Neely v. State, 317 Ark. 312,877 S.W.2d 589 (1994); Death and Total Permanent Disability Trust Fundv. Whirlpool Corp., 39 Ark. App. 62, 837 S.W.2d 293 (1992). This principle would suggest that the legislature, in enactingAct 46 of 1969, intended to extend common-law protections for voluntary providers of emergency services. Precisely how much it did so has not been the subject of judicial interpretation, and I am consequently unable to render an opinion on this question.
Question 4: In your opinion, is the analysis of Arkansas's pre-2007Good Samaritan Act by the New Jersey Supreme Court in Velazques v.Jimenez, *Page 9 172 N.J. 240, 798 A.2d 51 (2002) (stating that the law did "not provide immunity at all"), generally correct?
As noted in footnote 2, supra, the New Jersey Supreme Court's analysis of Arkansas's pre-2007 Good Samaritan Law consisted only of a brief footnote offering dictum to the effect that the Arkansas law and that of three other states would expose a provider of emergency care to liability for "ordinary negligence."[4] Without presuming to assess the justice of the court's pronouncement, I will note that a sister state's interpretation of Arkansas law is in no sense binding on an Arkansas court. I will further note that the legislature, in enacting the emergency clause to Act 46 of 1969, appears to have envisioned that it was indeed extending the scope of protection to providers of emergency care available at common law. Again, the extent of this protection has not been the subject of judicial review, most likely because the recipients of emergency care by volunteers have been understandably reluctant to file suit.
Question 5: In your opinion, what, if anything, was the nature andextent of any immunity or protection offered by the Good Samaritan Actprior to 2007?
For the reasons set forth in my responses to your previous questions, I am unable to offer a definite opinion on this question. I will note, however, that the legislature apparently felt that it had expanded the scope of common-law protection in adopting the Act.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] In this regard, I will note that the Good Samaritan law is contained in a chapter of the Code captioned "Physicians and Surgeons," although the law directly addresses emergency assistance rendered by other individuals.
[2] This conclusion would appear to reflect the opinion inVelazquez v. Jiminez, 798 A.2d 51, 59 n. 4 (N.J. 2002), in which the court observed:
 Four enactments, although denominated as Good Samaritan statutes that apply in hospitals, do not provide immunity at all; Good Samaritans in those states are subject to liability for ordinary negligence. Ark. Code Ann. A.C.A. § 17-95-101(a). . . .
The court further noted of the New Jersey Good Samaritan Act:
 The Good Samaritan Act renders a very circumscribed population of emergency volunteers immune from suit. The remainder of our citizens are subject to the ordinary common law rules governing conduct. Thus, for example, if a party has a pre-existing duty to act and breaches it, either by failing to act or performing in a negligent manner, the breach will be actionable. Restatement (Second) of Torts, Division Two, Ch. 12, Topic 4, Scope Note, at 65-66 (1965). In the absence of a pre-existing legal duty, if a party undertakes to act and does so in an unreasonable manner, that conduct will be actionable. . . .
 Whether a volunteer's conduct is reasonable depends upon the circumstances, including his or her experience and training. The standard of care to be imposed "will vary with . . . the level of skill of the individual" . . . and requires "careful consideration of all the attending circumstances, including any disability under which the rescuer might be operation — e.g., physical incapacity as well as the urgency of the situation and the concomitant need to act quickly." [Eric A.] Brandt, [Comment, Good Samaritan Laws — The Legal Placebo: A Current Analysis, 17 Akron L. Rev. 303 (1983)], supra, 17 Akron L. Rev. at 305 (citing Restatement (Second) of Torts §§ 283C, 296(1) (1977)). . . .
 The narrow holding here . . . merely carries out the Legislature's intention to carve out, from the ordinary rules of tort liability, a class of volunteers that ministers to victims suffering through the first critical moments after an unexpected event such as a roadside motor vehicle accident, a dwelling fire, a gas pump explosion, a heart attach, or premature labor in a location at which facilities, staff, equipment, sanitation or expertise are limited.
[3] This suggestion may draw some support from former A.C.A. § 17-95-605 (Repl. 2002), repealed by Acts 2005, No. 273, § 2, which provided as follows regarding the use of a defibrillator in administering emergency care:
 (a) Any person or entity who in good faith and without compensation renders emergency care or treatment by the use of an automated external defibrillator is immune from civil liability for any personal injury as a result of the care or treatment or as a result of any act or failure to act in providing or arranging further medical treatment, if the person acts as an ordinary, reasonably prudent person would have acted under the same or similar circumstances.
 * * * (c) The immunity from civil liability under subsection (a) of this section does not apply if the personal injury results from the gross negligence or willful or wanton misconduct of the person rendering the emergency care.
(Emphases added.) Although subsection (a) might be read as subjecting a treating individual to liability simply if he acts unreasonably in rendering care, subsection (c) qualifies this conclusion by suggesting that the immunity will apply so long as the treating individual's conduct does not extent to "gross negligence or willful or wanton misconduct." While no such direct tension exists in the former Good Samaritan Act, the fact that the General Assembly apparently did not perceive the two subsections just quoted as conflicting may call into question just what it intended in referring to a "reasonable and prudent" person in A.C.A. § 17-95-101. Any question about this issue is merely reinforced by the fact that it is difficult to conceive why the legislature would have enacted the Good Samaritan law if it had no practical legal effect.
[4] Compare Willard v. Vicksburg, 571 So. 2d 972 (Miss. 1990) (inviting the legislature to amend a Good Samaritan statute granting immunity to anyone who rendered emergency care in good faith and with reasonable care, noting that it "fails miserably in its two-fold purpose which is to remove the common law liability associated with rescue and to encourage people to stop and render aid to those in need").